## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JAMES H. OPPLIGER and<br>GAYLE OPPLIGER, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:06CV750 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| and | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 8:08CV530 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| JAMES H. OPPLIGER and<br>GAYLE OPPLIGER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on James H. Oppliger and Gayle Oppliger's Motion for Protective Order (Filing No. 55 in case No. 8:06CV750; Filing No. 32 in case No. 8:08CV530).[1]  The Oppligers filed a brief (Filing No. 59) and an index of evidence (Filing No. 58) and requested an in camera review.  The United States filed a brief (Filing No. 65), with an exhibit attached, in opposition to the motion for protective order.  The Oppligers filed a brief (Filing No. 66) in reply.


**BACKGROUND**

The Oppligers filed a lawsuit against the United States on December 11, 2006, for the refund of Internal Revenue Code of 1986 (IRC) § 6672 penalties collected from the Oppligers for the relevant period March 31, 1999, through March 31, 2002.  **See** Filing No.

---

[1] All citations to the record will only be to the filings in case number 8:06CV750, unless specifically noted otherwise.

1.  The Oppligers' complaint alleges the following facts.  Mr. Oppliger was the manager of Livestock Feed Company, LLC (LFC).  *Id.* ¶ 6.  Mary Kerkman served as an officer, director, and business manager, for LFC.  *Id.* ¶ 7.  In this capacity, Ms. Kerkman was responsible for preparing and filing all federal withholding returns and deposits, but routinely failed to do so during the relevant period.  *Id.* ¶¶ 8-9.  Ms. Kerkman kept this information from the Oppligers.  *Id.* ¶¶ 10-12.  In April 2002, Ms. Kerkman committed suicide.  *Id.* ¶ 13.  Shortly thereafter, the Oppligers became aware of the unpaid withholding obligations and protested a penalty assessment without success.  *Id.* ¶¶ 13-17.  On May 1, 2006, the Internal Revenue Service (IRS) assessed the Oppligers with penalties, pursuant to IRC § 6672, totaling $2,360,259.93.  *Id.* ¶ 18.  Each of the Oppligers paid $15,015.00, to the IRS, such amount representing the penalty attributable to one employee for each of the relevant quarterly periods.  *Id.* ¶ 19.  The Oppligers filed claims for refunds, which were disallowed.  *Id.* ¶¶ 20-21.  The Oppligers contend the assessments and collections made pursuant to IRC § 6672 were erroneous and they have overpaid their liability.  *Id.* ¶¶ 23-24.  The Oppligers seek return of the $30,030.00 previously paid and for abatement of the remaining penalties.  *Id.* at 5.  On February 12, 2007, the United States filed an answer and counterclaims against the Oppligers seeking judgments against each of the Oppligers for $2,363,704.25, plus interest, for the unpaid balances of the tax assessments.  **See** Filing No. 9.

On December 12, 2008, the United States filed a lawsuit against the Oppligers for the purpose of reducing a federal tax assessment to a judgment.  **See** Filing No. 1 in Case No. 8:08CV530.  The United States' complaint alleges the following facts.  On December 4, 2006, the IRS assessed a recovery penalty, pursuant to IRC § 6672, in the amount of $27,013.21, against each of the Oppligers for the quarterly tax periods ending March 31, 1998, through December 31, 2002.  *Id.* ¶¶ 6, 11.  These assessments are related to an alleged failure to collect, account for, and pay taxes associated with the wages of employees of Double O, Inc.  *Id.* ¶¶ 7, 12.  On December 17, 2008, the Oppligers' lawsuit and the United States' lawsuit were consolidated for all purposes.  **See** Filing No. 35.  On January 6, 2009, the Oppligers filed an answer and counterclaim.  **See** Filing No. 11 in Case No. 8:08CV530.  The Oppligers deny liability with regard to the December 4, 2006, assessments.  *Id.*  The Oppligers also allege Mr. Oppliger was the President of Double O,

2

Inc., which company suffered the same conduct of Ms. Kerkman as did LFC.  *Id.* ¶¶ 6-15. The Oppligers contend the December 4, 2006, assessments were erroneous and should be abated.  *Id.* ¶ 17.

On November 3, 2009, the parties took the deposition of an unrepresented individual, Richard Behrns, who is not a party to this action.  **See** Filing No. 58 - Brislen Aff. ¶ 2.  Prior to the deposition, Mr. Behrns produced documents to the United States, pursuant to a subpoena.  *Id.* ¶ 3.  The production included correspondence written by an attorney, Paul Gardner, and addressed to both Mr. Behrns and Mr. Oppliger.  *Id.* ¶ 3.  The Oppligers objected to production of, and questioning related to, the Gardner correspondence based on the attorney-client privilege because Mr. Gardner represented both Mr. Behrns and Mr. Oppliger at the time the document was written.  The undersigned magistrate judge held a telephone conference with the parties and determined that any attorney-client privilege with regard to the Gardner correspondence had been waived by Mr. Behrns.  The Oppligers now seek reconsideration of the waiver determination.  **See** Filing No. 55 - Motion.

The Oppligers argue Mr. Behrns and Mr. Oppliger had consulted Mr. Gardner on a matter of common interest.  **See** Filing No. 59 - Brief p. 2.  As such, the Oppligers contend Mr. Behrns did not have the ability to unilaterally waive a privilege held by Mr. Oppliger. *Id.* at 2-4.  Alternatively, the Oppligers assert Mr. Behrns did not intentionally waive the attorney-client privilege with regard to the Gardner correspondence.  *Id.* at 4-5. Accordingly, the Oppligers seek an order preventing the United States from questioning Mr. Behrns about the Gardner correspondence and requiring the United States to return or destroy any copies of the Gardner correspondence.  In response, the United States argues the common interest doctrine does not apply to the Gardner correspondence because Mr. Behrns and Mr. Oppliger were adverse parties, even during their joint representation by Mr. Gardner.  **See** Filing No. 65 - Brief p. 5-6.

### ANALYSIS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense--including the existence, description, nature, custody, condition, and location of any documents . . ."  Fed. R. Civ. P. 26(b)(1).  However, "[t]he

District Court does have discretion to limit the scope of discovery." *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). A party may move for an order protecting disclosure or discovery, which is granted only upon a showing of good cause. **See** Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999). A person opposing production of documents based on privilege or seeking protection for documents that fall under the attorney-client privilege has the burden of establishing the privilege applies. **See** Fed. R. Civ. P. 26(b)(5); Fed. R. Civ. P. 45(d)(2)(A). Similarly, a person opposing production bears the burden of establishing a waiver, by disclosure or otherwise, did not occur. **See** *United States v. Hatcher*, 323 F.3d 666, 675 (8th Cir. 2003) (Bye, J., concurring).

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are "governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." More specifically, Federal Rule of Evidence 502 states:

> **Inadvertent disclosure.**–When made in a Federal proceeding or to a Federal office or agency, the disclosure does not operate as a waiver in a Federal or State proceeding if:
> (1)   the disclosure is inadvertent;
> (2)   the holder of the privilege or protection took reasonable steps to prevent disclosure; and
> (3)   the holder promptly took reasonable steps to rectify the error . . . .

Fed. R. Evid. 502(b).

"[C]ourts have generally followed one of three distinct approaches to attorney-client privilege waiver based on inadvertent disclosures: (1) the lenient approach, (2) the 'middle of the road' approach, which is also called the *Hydraflow* approach, and (3) the strict approach." *Gray v. Bicknell*, 86 F.3d 1472, 1483 (8th Cir. 1996) (**citing** *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993)). The lenient approach, requiring knowing and intentional waiver, has been rejected by the Eighth Circuit for policy reasons.

*Id.*  Similarly, the strict approach, stripping privilege based on any production, is generally rejected.  *Id.*  The Eighth Circuit prefers the middle of the road approach.  *Id.*

Under the middle of the road approach:

> the court undertakes a five-step analysis of the unintentionally disclosed document to determine the proper range of privilege to extend.  These considerations are (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in view of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to rectify the disclosure, and (5) whether the overriding interest of justice would be served by relieving the party of its error.

*Gray*, 86 F.3d at 1483-84; **see** *Mendenhall v. Barber-Greene Co.*, 531 F. Supp. 951, 954-55 (N.D. Ill. 1982) ("A truly inadvertent disclosure cannot and does not constitute a waiver of the attorney-client privilege.  The issue for counsel and the court upon a claim of inadvertent disclosure must be whether the disclosure was actually inadvertent, that is, whether there was intent and authority for the disclosure.").  Before the court addresses the circumstances pertinent to inadvertent production, however, the party seeking such relief must demonstrate that the documents in question were, in fact, covered by a privilege.

## A.    Privilege

The United States contends the Gardner correspondence was never a privileged document because the correspondence was an open communication to multiple individuals who lacked a common interest.  **See** Filing No. 65 - Brief p. 5-6.  In support of this argument, the United States alleges the following facts.  In 2002, Mr. Oppliger and Mr. Behrns entered into a purchase and sale agreement on behalf of their respective companies.  **See** Filing No. 65 - Ex. A Settlement Agreement p. 1.  In 2004, Mr. Behrns "discovered liabilities and obligations which allegedly constitute a claim for breach of the Purchase Agreement."  *Id*.  Mr. Behrns and Mr. Oppliger sought representation by the same counsel to resolve their potential dispute.  On November 23, 2004, the law firm representing both parties requested a written waiver for the "[s]imultaneous representation of parties with adverse interests by attorneys in the same law firm."  **See** Filing No. 58 - Ex.

1 Gardner Correspondence p. 1.  The parties agreed to the waiver and ultimately entered a settlement agreement regarding the breach allegations.  **See _id._**; Filing No. 65 - Ex. A Settlement Agreement.

The Oppligers do not contest the facts as alleged by the United States.  However, the Oppligers maintain the attorney-client privilege attached to the Gardner correspondence, from the outset, because Mr. Oppliger and Mr. Behrns enjoyed joint representation by Mr. Gardner with regard to the Settlement Agreement.  **See Filing No. 59** - Brief p. 2-6.  The Oppligers argue the Gardner correspondence is privileged despite any actual or potential "adverse interests" the clients may have possessed at the time of the attorney's representation.

The court has reviewed the Gardner correspondence, in camera.  As an initial matter, the attorney-client privilege would attach to the Gardner correspondence based on its author and content.  **See _Diversified Indus., Inc. v. Meredith_, 572 F.2d 596, 601-02 (8th Cir. 1977)** (providing conditions under which the attorney-client privilege is applicable). The court will now evaluate the parties' arguments about whether the Gardner correspondence forgoes the privilege based on the recipients.

As a general rule, when individuals share an attorney as joint clients, the attorney-client privilege will protect communications, between the attorney and the joint clients, from all third parties, absent effective waiver.  **See _In re Teleglobe Commc'ns Corp._, 493 F.3d 345, 363 (3d Cir. 2007)** ("When co-clients and their common attorneys communicate with one another, those communications are 'in confidence' for privilege purposes.  Hence the privilege protects those communications from compelled disclosure to persons outside the joint representation."); **_Massachusetts Eye & Ear Infirmary v. QLT Phototherapeutics, Inc._, 412 F.3d 215, 225 (1st Cir. 2005)**; **see also _John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO_, 913 F.2d 544, 555-56 (8th Cir. 1990)**.  The issue before the court is whether Mr. Oppliger and Mr. Behrns were joint clients of Mr. Gardner.  A number of factors are relevant to determine the relationship between the individuals and counsel including the reasonable subjective views and conduct of the individuals and the attorney.  **See _F.D.I.C. v. Ogden Corp._, 202 F.3d 454, 461-62 (1st Cir. 2000)**; **see also _Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd._, 150 F.R.D. 648, 652-53 (N.D. Cal. 1993)** (listing factors).  In this case, the undisputed facts

show the attorney and both clients reasonably believed joint representation existed.  In fact, the document at issue begins:  the law firm's attorneys "have represented and continue to represent each of the persons and entities addressed in this letter."  **See** Filing No. 58 - Ex. 1 Gardner Correspondence p. 1.  Mr. Oppliger and Mr. Behrns met with Mr. Gardner regarding legal representation for a single issue for which they sought a cooperative resolution.  Furthermore, the legal representation resulted in a settlement agreement.  **See** Filing No. 65 - Ex. A Settlement Agreement.  Accordingly, the court finds a joint client relationship existed.

In addition to whether the Mr. Oppliger and Mr. Behrns were joint clients, the court must determine whether the

> communications have been "made in the course of the attorney's joint representation of a 'common interest' of the two parties."  The term "common interest" typically entails an identical (or nearly identical) legal interest as opposed to a merely similar interest.  Thus, the proponent of the exception must establish cooperation in fact toward the achievement of a common objective.

*Ogden Corp.*, 202 F.3d at 461 (internal citations omitted).

Accordingly, the Oppligers must establish a "common interest" existed at the time of the relevant communications.  The United States contends it defies logic to find a common interest existed between two parties who had "adverse interests" and were on opposite sides of a civil dispute.  **See** Filing No. 65 - Brief p. 3.  However, even an "intrinsic" adversity between the clients may not destroy the identity of interests at the time of the joint representation.  **See** *Ogden Corp.*, 202 F.3d at 463; **see also** *In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992) (noting the same is true if the employment of counsel by the group of clients is ultimately declined).  "The rules of discovery therefore do not insulate from discovery the communications of a duplicitous party who feigns common interest while scheming otherwise with a shared, trusted advisor." *Massachusetts Eye & Ear Infirmary*, 412 F.3d at 226; **see also** *In re Auclair*, 961 F.2d at 69 (noting no evidence suggested the individuals had any intention contrary to the common interest representation).

In this case, Mr. Oppliger and Mr. Behrns sought an apparently amicable and joint resolution of an issue "which allegedly constitutes a claim for breach of the Purchase Agreement."  **See** Filing No. 65 - Ex. A Settlement Agreement.  Mr. Oppliger and Mr.

Behrns sought joint counsel, agreed to joint representation, and ultimately resolved the potential problem between them through a settlement agreement.  The facts show that at the time of the relevant communications, Mr. Oppliger and Mr. Behrns were reasonable in believing in the existence of common interests and possessed reasonable expectations of confidentiality sufficient to support the attorney-client privilege.  However, such privilege is vulnerable to waiver.

**B.    Waiver**

The Oppligers argue disclosure of the Gardner correspondence by Mr. Behrns does not constitute a waiver of the privilege by either Mr. Behrns on his own behalf or with regard to the privilege held by Mr. Oppliger.  Specifically, the Oppligers contend the production was intentional, yet inadvertent because Mr. Behrns did not know he could refuse production in light of the United States' subpoena.  **See** Filing No. 66 - Reply p. 2. Under the circumstances present, the Oppligers assert, irrespective of whether Mr. Behrns could waive Mr. Oppliger's privilege, Mr. Behrns' conduct does not establish effective waiver of his own privilege that had attached to the Gardner correspondence.  *Id.*  The United States argues only that no privilege exists, thus relies on the fact of production for evidence of waiver.  **See generally** Filing No. 65 - Brief.

In this case, Mr. Behrns' production was not inadvertent in the sense that he did not know what he was doing.  Although the production was knowingly made, the undisputed evidence in the record shows Mr. Behrns did not realize he had any choice but to produce the Gardner correspondence in response to the United States' subpoena.  **See** Filing No. 58 - Ex. 3 Behrns Decl. ¶¶ 2-3.  It is clear Mr. Behrns did not compromise the confidentiality of the document for his own benefit.  The court finds Mr. Behrns' conduct was reasonable. Furthermore, once the Oppligers' counsel raised the issue to Mr. Behrns, Mr. Behrns promptly attempted to rectify the disclosure by informing counsel and the court of his intent to rely on the privilege and maintain the confidentiality of his privileged documents.  *Id.* With these facts in mind and the situation surrounding production of the Gardner correspondence, the court finds an overriding interest of justice would be served by relieving Mr. Behrns of his error.  Accordingly, the court concludes no waiver of the

attorney-client privilege covering the Gardner correspondence occurred.    Upon consideration,

**IT IS ORDERED:**

1.      James H. Oppliger and Gayle Oppliger's Motion for Protective Order (Filing No. 55 in case No. 8:06CV750; Filing No. 32 in case No. 8:08CV530) is granted.

2.      The United States shall refrain from any questioning of Mr. Behrns about the Gardner correspondence and return or destroy any copies of the Gardner correspondence in its possession and shall file a notice of compliance **on or before February 26, 2010**.

## ADMONITION

Pursuant to NECivR 72.2 any objection to this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order.  Failure to timely object may constitute a waiver of any objection.  The brief in support of any objection shall be filed at the time of filing such objection.  Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 8th day of February, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.